Portsmouth District Court
No. 97-613

THE STATE OF NEW HAMPSHIRE

v.

ROBERT A. RICCI, JR.

October 20, 1999

*Philip T. McLaughlin*, attorney general (*Christopher H.M. Carter*, assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* and *Harry N. Starbranch, Jr.* on the brief, and *Mr. Starbranch* orally), for the defendant.

BRODERICK, J. The defendant, Robert A. Ricci, Jr., appeals his conviction for driving under the influence, *see* RSA 265:82 (Supp. 1998), arguing that the Portsmouth District Court (*Giles*, J.) erred in denying his motion to suppress evidence obtained from a warrantless entry into his home. We affirm.

Because no separate evidentiary hearing was held on the suppression motion, we recite the facts adduced at trial viewed in the light most favorable to the State. On the night of July 10, 1997, Officers Ferland and Russo of the Portsmouth Police Department were standing patrol in downtown Portsmouth. Around ten o'clock, the defendant, who is a police commissioner for the City of Portsmouth, and his girlfriend walked within a few feet of the officers, and the defendant greeted them. The officers noticed the defendant's staggered walk, glassy-eyed stare, and bloodshot eyes. They also detected an odor of alcohol and believed that the defendant was intoxicated. A few minutes later, the officers parted company. As Officer Russo was traveling on his police motorcycle, he saw the defendant entering a car in a nearby parking lot. Shortly thereafter, Officer Ferland drove by in his cruiser and saw the defendant behind the wheel of a car exiting the lot. Concerned about the defendant's apparent intoxication, Officer Ferland followed behind and was soon joined by Officer Russo. The defendant took a right turn without using a directional, drove through a crosswalk without yielding to pedestrians, wove between two travel lanes, and at times, traveled fifteen to thirty-five miles per hour above the posted speed limit. Officer Ferland radioed for assistance to stop the defendant's vehicle. Officer McQuate responded, and two of the three police vehicles then following the defendant activated their blue lights and sirens. The defendant, however, did not pull over. Upon seeing the lights, he indicated to his girlfriend, a passenger in the car, that he did not intend to stop until he arrived at his home, which was located approximately three-tenths of a mile away.

Once home, the defendant pulled into his driveway. McQuate brought his cruiser to a stop behind the defendant's car and immediately began walking toward it. The cruiser's headlights remained illuminated, and when the defendant alighted, McQuate noticed his flushed face, bloodshot and watery eyes, and swaying stance, and detected an odor of alcohol. He repeatedly directed the defendant to come to the front of the cruiser, but the defendant insisted that he needed to let his dog, which was tied up and barking, into the house. McQuate acquiesced but instructed him to return immediately. After the defendant let the dog inside, he quickly followed. McQuate immediately proceeded after him, ordering him to return to the cruiser. Once in the house, McQuate instructed the defendant to go outside for a field sobriety test. The defendant refused, saying: "I'm in my own house now. I'm not going to do anything." McQuate arrested the defendant for driving under

the influence of alcohol. The defendant's blood test revealed an alcohol content of .16, twice the legal limit. *See* RSA 265:82, I(b).

The defendant was charged with two alternate counts of driving under the influence of alcohol and one count of disobeying a police officer. After a bench trial, the district court denied the defendant's suppression motion. The defendant was convicted of disobeying an officer and driving with a blood alcohol content of .08 or more. On appeal, only the defendant's conviction for driving under the influence is at issue.

The defendant argues that the warrantless entry by the police into his home to arrest him for a violation infringed upon his State and federal constitutional rights to be free from unreasonable searches and seizures, and that evidence obtained from such activity should have been suppressed. The State contends that its warrantless entry was justified by exigent circumstances. Specifically, it argues that the police were in "hot pursuit" of the defendant when they entered his home and needed to preserve evidence of the defendant's intoxication without the delay inherent in securing a warrant at night. We decide this case under the State Constitution and cite federal law only for guidance because the Federal Constitution provides no greater protection. *See State v. Santana*, 133 N.H. 798, 803, 586 A.2d 77, 80 (1991); *State v. Ball*, 124 N.H. 226, 231-32, 471 A.2d 347, 350-51 (1983).

 Under Part I, Article 19 of our State Constitution, all warrantless police entries are *per se* unreasonable and thus illegal unless made pursuant to a judicially created exception. *Santana*, 133 N.H. at 803, 586 A.2d at 80. The warrant requirement is particularly stringent when entry into a defendant's home is involved. *See id.; see also Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (warrant requirement stands as "a principal protection against unnecessary intrusions into private dwellings" for purposes of effectuating a search or arrest). The State bears the burden of proving the existence of exigent circumstances, such as hot pursuit, to justify a warrantless home intrusion. *Welsh*, 466 U.S. at 749-50.

Whether exigent circumstances exist is judged on the totality of the circumstances, "which includes an examination of the overall reasonableness of the police officers' behavior prior to the entry." *Santana*, 133 N.H. at 804, 586 A.2d at 81 (quotation omitted). Hot pursuit, as an exigency, "relates to the circumstances governing the officer's conduct, to the situation as reasonably perceived by the officer, and must be assessed from the officer's perspective." *Com. v. Talbert*, 478 S.E.2d 331, 334 (Va. Ct. App. 1996). A suspect's elusive

conduct bears on the reasonableness of a police officer's perceptions and actions. *See id.* We are mindful, however, that the exigency exception "can very easily swallow the rule unless applied in only restricted circumstances." *Santana*, 133 N.H. at 804, 586 A.2d at 81 (quotation omitted).

 Whether an exigency exists is a question of fact, and we will not disturb the lower court's decision unless it is clearly erroneous. *Id. But see United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995), *cert. denied*, 518 U.S. 1020 (1996). Our review of the district court's ruling in this case is somewhat complicated by the fact that it did not issue a written order, make factual findings, or expound on its reasoning when denying the defendant's motion to suppress. Viewing the facts in the light most favorable to the State, we conclude that the totality of the circumstances demonstrates that the police were in hot pursuit of the defendant when he continued to elude them by disobeying an order and entering his house.

At the outset, the defendant argues that a warrantless home entry to arrest an individual for a violation, rather than for a crime, requires a more stringent standard to be constitutionally justified. We need not decide this narrow inquiry because the facts of this case demonstrate that the police had probable cause to arrest the defendant for the misdemeanor offense of disobeying a police officer prior to entering his home. *See* RSA 265:4 (1993) (purposely failing to stop when signaled to do so by law enforcement officer constitutes a misdemeanor). That Officer McQuate actually arrested the defendant for a violation rather than a misdemeanor is not dispositive. *Cf. State v. Ramirez*, 814 P.2d 1131, 1134 (Utah Ct. App. 1991) (when assessing validity of warrantless home arrest, court considered whether police had probable cause to believe that public offense was committed prior to home entry even though defendant was only charged for conduct occurring inside the home). Accordingly, we examine whether the police were in hot pursuit of the defendant when they entered his home on the night of July 10, 1997.

 Hot pursuit, the exigent circumstance offered by the State to justify the conduct of the police, requires immediate and continuous pursuit of a defendant from the scene of a crime. *See Welsh*, 466 U.S. at 753. Here, the police followed the defendant for a considerable distance with their sirens and blue lights activated. Rather than comply with police demands in a public place, however, the defendant continued driving home with the police following. McQuate immediately approached the defendant and repeatedly directed him to come to the front of the cruiser. The defendant again resisted

complying with police demands while standing in his driveway, *see State v. Pinkham*, 141 N.H. 188, 191, 679 A.2d 589, 591 (1996) (police entitled to enter semi-private driveway for legitimate police business), and insisted on letting his dog into the house. While McQuate granted the limited request, the defendant exceeded its scope by quickly following the dog into the house.

Presumably based on McQuate's concession, the defendant argues that "he did not flee into his home," and thus, no hot pursuit existed. We disagree. McQuate did not give the defendant permission to enter his home, but rather repeatedly instructed him not to do so and to return to the cruiser. Given the defendant's conduct up to that point, we cannot say that it was unreasonable for Officer McQuate to allow the defendant to take a few seconds to let his dog inside rather than physically restraining him from doing so and risking an escalation of an otherwise innocuous police stop into a potentially violent one. A momentary pause, under the facts of this case, did not interrupt the otherwise immediate and continuous pursuit of the defendant into his home.

It would offend constitutional search and seizure protections to permit the defendant to defeat his arrest when the pursuit began in a public place and he achieved entry into his private domain only through apparent deceit. Just as the police cannot create an exigency for purposes of avoiding the warrant requirement, *see Santana*, 133 N.H. at 805, 586 A.2d at 81, defendants cannot trigger the need for a warrant by racing the police to the sanctity of the home, *see United States v. Santana*, 427 U.S. 38, 42-43 (1976); *Ramirez*, 814 P.2d at 1134. "Law enforcement is not a child's game of prisoners base, or a contest, with apprehension and conviction depending upon whether the officer or defendant is the fleetest of foot." *State v. Blake*, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984). We conclude that the totality of the circumstances, including the defendant's apparent elusive conduct, demonstrates that the police were in hot pursuit of the defendant when they entered his home. Accordingly, we affirm the defendant's driving under the influence conviction.

*Affirmed.*

All concurred.