Auburn District Court
No. 99-701

THE STATE OF NEW HAMPSHIRE

v.

HEIDI LEE SEAVEY

December 19, 2001

*Philip T. McLaughlin,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Law Offices of Robert J. Moses,* of Amherst (*Robert J. Moses* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Heidi Lee Seavey, was convicted after a bench trial in the Auburn District Court (*LeFrancois,* J.) of driving while intoxicated second offense (DWI), RSA 265:82(b) (1993 & Supp. 2000), and conduct after an accident, RSA 264:25 (1993 & Supp. 2000). On appeal, she argues that the trial court erred in denying her motion to suppress. We reverse and remand.

On August 3, 1998, at approximately 7:30 p.m., Officer Michael Bernard was dispatched to the scene of a motor vehicle accident on Pingree Hill Road in Auburn. Also responding to the accident was Edward Gannon, a Derry paramedic firefighter. When they arrived at the scene, they found a car crashed against a telephone pole, which was broken in half. The car itself had a displaced steering wheel and a broken windshield in which hair was found. The defendant, who was the driver of the vehicle, was not in the car. After searching the surrounding area and not finding anyone, both the officer and paramedic firefighters left the scene.

Shortly thereafter, Bernard and Gannon were dispatched to an apartment down the street from the accident. Waiting outside the apartment was David Canedy who had followed the defendant from the accident scene and telephoned her location to the Rockingham County dispatch. Bernard arrived first and spoke to Canedy. Canedy gave the officer the defendant's driver's license and proceeded to tell him his account of the situation. He told the officer that he had been in his house on Pingree Hill Road when he heard a loud crash. He went outside and saw the defendant get out of the vehicle. When Canedy approached the defendant, they had a conversation and she presented her driver's license to him. He initially did not take it. Shortly after this exchange, the defendant walked behind a nearby house. When she returned, she told Canedy that she was going to her boyfriend's house and gave him her license, which he then accepted. Canedy then watched her walk some distance down the road, where she flagged down a passing motorist, David Joyce, in a pickup truck and obtained a ride. Canedy then followed her to the apartment above the horse barn. Throughout this exchange, the only observance of any physical injury that Canedy mentioned to Bernard were cuts on the defendant's knees.

Thereafter, Canedy told Bernard that the truck that had picked up the defendant was parked in the driveway to the apartment and that he could hear voices on the second floor apartment above the horsebarn. Bernard

ascended the stairway and knocked at the door. When he received no response, he descended the stairway and began to walk around, looking at the area outside of the barn.

Shortly thereafter, Gannon and other rescue personnel arrived. After Officer Bernard informed them of the defendant's whereabouts, the rescue personnel entered the apartment. Bernard followed them into the residence and found the defendant hiding in a bathtub with Joyce. Bernard instructed her to come out of the tub. He observed that the defendant's knees were bleeding and that she smelled of alcohol. Bernard immediately asked her why she had left the scene of the accident and how much alcohol she had consumed. Following these questions, Bernard had the rescue personnel attend to her. The defendant, however, refused medical treatment. Subsequently, the defendant agreed to perform field sobriety tests. After conducting several tests, Bernard informed the defendant that she had failed the tests and placed her under arrest for DWI.

Prior to trial, the defendant filed a motion to suppress alleging, among other things, an unconstitutional warrantless entry. The court denied the motion.

Although the defendant raises several issues on appeal, we need address only one: whether the warrantless entry into the apartment in which she was located violated her rights under the Fourth Amendment to the Federal Constitution and Part I, Article 19 of the New Hampshire Constitution. She asserts that the entry was not justified under the exigent circumstances exception. We first address the defendant's constitutional argument under the New Hampshire Constitution, citing federal cases only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 232 (1983). We need not engage in a separate federal analysis because our constitution provides greater protection than does the Fourth Amendment of the Federal Constitution. *See State v. Ricci*, 144 N.H. 241, 243 (1999).

Under Part I, Article 19 of the New Hampshire Constitution, warrantless entries are *per se* unreasonable and illegal unless the entry falls within one of the exceptions to the warrant requirement. *See State v. Santana*, 133 N.H. 798, 803 (1991). The warrant requirement applies not only to criminal searches but to noncriminal searches as well. *See State v. Beede*, 119 N.H. 620, 625-26 (1979), *cert. denied*, 445 U.S. 967 (1980). In addition, the search of a home is subject to a particularly stringent warrant requirement because the occupant has a high expectation of privacy. *See State v. Theodosopoulos*, 119 N.H. 573, 580 (1979), *cert. denied*, 446 U.S. 983 (1980). The State has the burden to show that the search was validly executed under one of the exceptions to the warrant requirement. *See Ricci*, 144 N.H. at 243.

■ The State contends that the entry was justified by exigent circumstances, based on the "emergency" exception. While the "emergency" exception is defined as including probable cause and exigent circumstances, we need address only the question of exigent circumstances in this appeal. *See Beede*, 119 N.H. at 626. The existence of exigent circumstances requires "a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety." *Theodosopoulos*, 119 N.H. at 580; *see also Mincey v. Arizona*, 437 U.S. 385, 392 (1978). In determining whether exigent circumstances exist, we consider the totality of the circumstances, including the overall reasonableness of the officer's behavior prior to the entry. *See Ricci*, 144 N.H. at 243. Whether a situation is sufficiently exigent is largely a question of fact to be determined by the trial court, which we will disturb only if clearly erroneous. *See State v. MacDonald*, 129 N.H. 13, 21 (1986).

The State argues that the trial court correctly based its finding of exigency on Gannon's conclusion, which was based on the damage to the car and telephone pole, that the defendant could have suffered critical injury as a result of the accident and needed immediate medical attention. These conclusions, however, were unfounded. Canedy had relayed his observations that the defendant had walked away from the accident and was fully capable of walking the distance of a street. This indicated that she was not physically impaired. In addition, the defendant was mentally coherent following the accident. She carried on a conversation with Canedy and had enough sense to give him her license. These factors strongly suggest a lack of life-threatening injury that would have required immediate medical attention. In fact, the only potential injury that Canedy mentioned to Officer Bernard was that the defendant's knees appeared cut. Although Canedy testified that the defendant appeared to walk unsteadily and had slurred some of her words, it is clear from the record that he never mentioned these observations to Officer Bernard.

■ Moreover, the rescue workers and police knew that the defendant was not alone in the apartment. Therefore, when the defendant did not answer the door it was not likely a result of her being debilitated and unable to respond. It was apparent that she had immediate assistance at hand if she needed or wanted it because she was not alone. In sum, from the facts that the defendant was not alone and from Canedy's observations that she was coherent and physically unimpaired, it was not reasonable for the officer and emergency personnel to believe that the defendant was in a life-threatening physical condition.

We are not convinced that this situation was sufficiently exigent to justify the entry under the exigent circumstances exception. In *Com. v. DiGeronimo*, 652 N.E.2d 148, 150-51 (Mass. App. Ct. 1995), a case with similar facts, the defendant left the scene of an auto accident and went home. A police officer entered the defendant's home without consent or a warrant after he received no answer from knocking on the defendant's door. *Id.* at 151. Considering, among other things, the fact that the defendant was capable of driving away from the scene and that a witness stated that he was not injured, the court held that the emergency exception did not apply. *Id.* at 155. The court found that the circumstances were not compelling enough to have led the officer to reasonably believe that the defendant was in life-threatening distress. *Id.* at 155. Similarly, here, the fact that the defendant walked down the road and was not alone indicates that she was not in dire need of immediate life-saving assistance.

The facts of the case at bar do not rise to the level of urgency demonstrated in previous cases where we have held emergency entries into private dwellings valid. In *State v. Slade*, 116 N.H. 436 (1976), the police responded to a reported argument between the defendant and his wife at their mobile home. An officer entered the home to search for potential victims after a gunshot was heard and after the defendant came outside. *Id.* at 437. This court found that the officer's entry into the home was valid because he reasonably believed that under the circumstances there could have been a victim in need of immediate assistance inside. *Id.* at 438. Likewise, in *Theodosopoulos*, police were justified in entering the defendant's apartment where they believed a sniper was shooting from within. *See Theodosopoulos*, 119 N.H. at 580-81. In these cases, there were alarming or volatile situations warranting the entry into the private residences. Even where there is a possible victim within a private dwelling but no volatile situation, this court has not found the existence of exigent circumstances when there is time to obtain a warrant. *See Beede*, 119 N.H. at 629.

Here, the facts fail to establish the requisite compelling circumstances that could have led Officer Bernard and the emergency personnel to reasonably believe that the defendant was in dire, life-threatening distress and in need of immediate assistance. The assertion of exigency here raises serious concerns that it may have been pretextual to gain entry into the home. This is precisely why "[t]he exigent circumstances exception is narrowly drawn [in order] to cover cases of real and not contrived emergencies." *Welsh v. Wisconsin*, 466 U.S. 740, 752 (1984) (quotation and brackets omitted). The solicitous protection that the New Hampshire and Federal Constitutions afford to the home must be preserved because "[a]t the very core of the Fourth Amendment stands the right of a man to

retreat into his own home and there be free from unreasonable governmental intrusion." *State v. Chaisson*, 125 N.H. 810, 816-18 (1984) (quotation omitted) (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)). We hold that the entry was impermissible because it falls within no recognized exception to the warrant requirement.

*Reversed and remanded.*

BRODERICK and NADEAU, JJ., concurred; DUGGAN, J., with whom DALIANIS, J., joined in part I, dissented.

DUGGAN, J. dissenting. The State seeks to justify the warrantless entry of the defendant's apartment on two theories — exigent circumstances and emergency aid. Because I conclude that the entry here was permissible under either theory, I respectfully dissent.

I

When the police are conducting a criminal investigation and want to enter a person's home to make an arrest, Part I, Article 19 and the Fourth Amendment require the police to first obtain an arrest warrant. *State v. Ricci*, 144 N.H. 241, 243 (1999); *Payton v. New York*, 445 U.S. 573 (1980). The police, however, are not required to obtain an arrest warrant prior to entry when they have probable cause to arrest, probable cause to believe that the defendant is inside the premises, *Payton*, 445 U.S. at 603, and there are exigent circumstances. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). In this case, all three requirements were satisfied.

There was probable cause to arrest the defendant for driving under the influence of liquor, a violation, RSA 265:82 (Supp. 2000), leaving the scene of an accident involving property damage, a misdemeanor, RSA 264:25 (Supp. 2000); RSA 264:29 (1993), and leaving the scene of an accident involving personal injury, a class B felony, RSA 264:25, :29. The facts supporting probable cause are that a witness had told the police that the defendant was the driver, that she was injured in the collision and that she had left the scene. Thus, the police had probable cause to believe that the defendant had committed various offenses, one of which is serious enough to be classified as a felony.

There was probable cause to believe that the defendant was in the apartment. The same witness observed the defendant get a ride in a red pickup truck, and followed the truck to 391 Pingree Road, where he then observed the empty truck parked outside a horse barn and heard voices coming from an apartment above the barn.

As to whether there were exigent circumstances, the facts are subject to two interpretations. On the one hand, the defendant walked away from the

accident, had carried on a conversation with the witness, had given him her license, and the only injury that the witness had observed was blood on her knees. In addition, the police knew prior to entry that the defendant was not alone in her apartment. On the other hand, the defendant's car had hit the telephone pole with such force that the pole had snapped in half, her head had hit the windshield hard enough to leave an imprint and some hair in the safety glass, the steering wheel was displaced and bent, and immediately after the impact the witness saw the defendant bent motionless over the wheel. An experienced paramedic firefighter after seeing the accident scene concluded that the driver could have "critical or life-threatening injuries."

Whether we should conclude that these facts amount to exigent circumstances depends on the standard of appellate review and the burden of proof. The standard of appellate review we have applied to this issue is: "Whether an exigency exists is a question of fact, and we will not disturb the lower court's decision unless it is clearly erroneous." *Ricci*, 144 N.H. at 244. Here, the district court explicitly found that there were exigent circumstances. The facts and testimony quoted above demonstrate that this conclusion was not clearly erroneous.

As for the burden of proof, "[t]he State bears the burden of proving the existence of exigent circumstances . . . ." *Ricci*, 144 N.H. at 243. While we have also said that "[t]he warrant requirement is particularly stringent when entry into a defendant's home is involved," *id.*, we have not decided what standard applies in meeting that burden.

In *Minnesota v. Olson*, the United States Supreme Court stated: "The Minnesota Supreme Court applied essentially the correct standard in determining whether exigent circumstances existed" when that court "observed that a warrantless intrusion may be justified by hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling." *Olson*, 495 U.S. at 100 (quotation and citation omitted). *Olson* noted that the Minnesota Supreme Court "thought that in the absence of hot pursuit there must be at least probable cause to believe that one or more of the other factors justifying the entry were present, and that in assessing the risk of danger, the gravity of the crime and the likelihood that the suspect is armed should be considered." *Id.*

Neither party has briefed or argued whether we should adopt the *Olson* standard that requires "at least probable cause . . . that one or more of the other factors" exist. Assuming, however, that we would apply the *Olson* standard, the district court's finding in this case should be upheld. The police and the rescue personnel had convincing physical evidence that the defendant had suffered serious bodily injury, including a possibly fatal

head or chest injury, and needed immediate treatment. Here, there was at least probable cause to believe that a person inside the apartment was in danger. *See United States v. Arch*, 7 F.3d 1300 (7th Cir. 1993), *cert. denied*, 510 U.S. 1139 (1994) (warrantless entry of motel room justified where defendant's bizarre behavior coupled with presence of bloody rags and two syringes on floor of room lead police to conclude an injured person might be in the room). Indeed, even if the State was required to prove by a more rigorous standard that a person was in danger from serious bodily injury, the evidence in this case met that burden.

In sum, the testimony of the eyewitness, police and rescue personnel clearly support the district court's conclusion that the State proved the police had probable cause to arrest the defendant for a serious offense; probable cause to believe the defendant was in the apartment; and that exigent circumstances existed given the rescue personnel's reasonable conclusion that the defendant was in danger from serious bodily injury. Consequently, the police were justified in making a warrantless entry. *Cf. Welsh v. Wisconsin*, 466 U.S. 740, 754 (1984) (concluding probable cause to arrest for civil traffic violation not serious enough to justify warrantless entry when imminent destruction of evidence creates exigency).

## II

While the warrant requirement of Part I, Article 19 and the Fourth Amendment protects against indiscriminate government searches as police conduct criminal investigations, in our contemporary society police perform a broad range of duties. Separate and apart from conducting criminal investigations, each and every day police are involved in " 'community caretaking functions' — helping stranded motorists, returning lost children to anxious parents, assisting and protecting citizens in need — 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *People v. Ray*, 981 P.2d 928, 931 (Cal. 1999), *cert. denied*, 528 U.S. 1187 (2000) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). As part of their community caretaking function, police respond to emergencies when there is an immediate need for their assistance in protecting life or property. This need to protect or preserve life or avoid serious injury justifies some entries that would otherwise be illegal absent the emergency. *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

The State argues that the police entry in this case falls within the "emergency aid" exception to the warrant requirement. *See generally State v. Frankel*, 775 A.2d 665, 669 (N.J. Super. Ct. App. Div. 2001). Other courts have adopted the following standard for applying the emergency aid exception. The State must show: (1) the police have objectively "reasonable

grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property"; (2) there is an objectively "reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched"; and (3) the search is not "primarily motivated by intent to arrest and seize evidence." *People v. Mitchell,* 347 N.E.2d 607, 609 (N.Y.), *cert. denied,* 426 U.S. 953 (1976); *see also State v. Mountford,* 769 A.2d 639, 644-45 (Vt. 2000) (adopting *Mitchell* standard); *Fargo v. Ternes,* 522 N.W.2d 176, 178 (N.D. 1994) (applying *Mitchell* standard); *State v. Boggess,* 340 N.W.2d 516, 521 (Wis. 1983) (applying similar standard); *Com. v. Snell,* 705 N.E.2d 236, 242-43 (Mass.), *cert. denied,* 527 U.S. 1010 (1999) (same). While this standard allows police to enter on less than probable cause, the prong that examines whether the police are primarily motivated by subjective intent to arrest and seize evidence serves to protect against the unreasonable searches prohibited by Part I, Article 19 and the Fourth Amendment. *See Mountford,* 769 A.2d at 645; *see also People v. Speer,* 540 N.E.2d 1089, 1094 (Ill. App. Ct. 1989) (distinguishing standard to be applied when purpose of entry is to check on the welfare of a person rather than to make an arrest and seize evidence).

Here, the police had objectively reasonable grounds to believe that an emergency was at hand and that the defendant was seriously injured. As noted above, the impact of the accident caused significant damage to the defendant's car and the telephone pole it struck. Consequently, it was not unreasonable for the police and rescue personnel, after observing the bent steering wheel and imprint of her head in the windshield, to conclude that the defendant could have "critical or life-threatening injuries."

The police also had a reasonable basis, approximating probable cause, to believe the defendant would be found in the apartment. As noted above, a witness saw the defendant get into a red pick-up truck and followed the truck to 391 Pingree Road. At 391 Pingree Road, the witness observed the defendant and Joyce enter the apartment and heard voices from inside the apartment. Officer Bernard found no signs of the defendant in his inspection of the grounds outside the apartment. Thus, it was not unreasonable for the police to believe the defendant would be found inside the apartment.

Finally, Officer Bernard testified that solely based on the impact to the car and telephone pole visible at the accident scene and the witness's report that the defendant had visible cuts on her knees, the rescue personnel determined that they should enter the apartment. It is significant that the rescue personnel entered the apartment first, followed by Officer Bernard who went in "to assist the fire department." When

Officer Bernard entered the apartment, the rescue personnel reported that they could not find anybody. Thereafter, Officer Bernard assisted with the search and found the defendant with Joyce in the bathroom tub. After directing the defendant and Joyce to come out of the tub, Officer Bernard asked the defendant, "Why did you leave the scene of the accident?" She replied, "I am afraid of you guys." When Officer Bernard noticed the cuts on her knees, he did not question her further but "felt i[t] would be best if the rescue personnel attend to her." These facts demonstrate that the rescue personnel and Officer Bernard were not primarily motivated by an intent to arrest and seize evidence.

Other courts have applied this standard and determined a warrantless entry was justified by the emergency aid exception under similar circumstances. *See, e.g., City of Fargo,* 522 N.W.2d at 178-79 (holding warrantless entry justified when police learned defendant involved in a car accident resulting in a cut on to his right cheek and visible damage to the car). *But cf. Com. v. DiGeronimo,* 652 N.E.2d 148, 154-56 (Mass. App. Ct. 1995) (holding warrantless entry not justified when police learned defendant involved in a car accident but reportedly was uninjured, then waited fifty minutes at accident scene before going to defendant's home, and upon finding the defendant "made no inquiry whether [he] was injured or required assistance"). Accordingly, I would hold that the entry in this case was also justified under the emergency aid exception to the warrant requirement.

DALIANIS, J., joins in part I of the dissent.