Lebanon District Court
No. 2002-617

## THE STATE OF NEW HAMPSHIRE

v.

## CORY MACELMAN

Argued: June 18, 2003
Opinion Issued: September 2, 2003

*Peter W. Heed,* attorney general (*Wynn E. Arnold,* senior assistant attorney general, on the brief and orally), for the State.

*DesMeules, Olmstead & Ostler,* of Norwich, Vermont (*George H. Ostler* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Cory MacElman, appeals his conviction in the Lebanon District Court (*Cirone,* J.) for possession of controlled drugs, RSA 318-B:2 (Supp. 2002). He argues that the trial court erred in denying his motion to suppress based upon the exigent circumstances exception to the warrant requirement. We affirm.

The following facts were found by the trial court or are evident from the record. On October 4, 2001, at around 8:00 p.m., the Lebanon police department received an anonymous call reporting that "there was a vehicle behind [the defendant's] residence, potentially looking like he was about to go over the embankment" and fall onto Interstate Highway 89. After receiving this report from a dispatcher, Officer Steven St. Louis, along with an officer in training, drove to the defendant's residence to investigate. As they pulled into the driveway of the residence, Officer St. Louis saw the exterior brake or tail lights, and interior dome light, of a car parked in the back yard behind the house, close to a small fence that marked the boundary between the property and the embankment. The officer noted that somebody appeared to be inside the car. The officer's view, however, was obstructed by a tree in front of the car and by darkness.

The officers first tried to alert any residents inside the house by "knocking on the [side] door loudly" and yelling inside the open front door. After receiving no response, the officers approached the car in the backyard. Officer St. Louis testified that his motive was to "find out if there was anybody in the vehicle that needed some assistance, if they were ... about to go over the embankment or not," and "[t]o make sure that [the car's occupants] were safe and didn't need any assistance." He testified that when he reached the back bumper of the car:

[A]ll at once I saw the vehicle wasn't in distress, it was still on the flat part of the yard, on the proper side of the fence; I could see that there was a dome light on in the car and that there were three people inside it.

I saw that there was — it was filled with a white smoke, um, and I saw the driver passing an item back to the passenger in the back seat who immediately put it up to his mouth and smoked it, and I could see that it then was a pipe commonly used for smoking marijuana.

At that point, based upon his observation that the occupants were "obviously . . . using something that was illegal," the officer approached the car and subsequently arrested the defendant, who was one of the car's occupants.

The State charged the defendant with possession of marijuana and underage possession of cigarettes. The defendant moved to suppress all evidence seized by the officer, arguing that the discovery of the drug evidence was the fruit of an illegal search of the defendant's property. The court, relying upon the "exigent circumstances exception" in *State v. Theodosopoulos*, 119 N.H. 573 (1979), denied the motion, finding that the officer's entry onto the property was warranted because the situation was "sufficiently urgent and potentially dangerous that he had reasonable grounds to believe that there was an emergency at hand." On appeal, the defendant argues that the totality of the circumstances did not justify the intrusion. "When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo*." *State v. Plch*, 149 N.H. 608, 613 (2003). (quotation omitted).

We first address the defendant's claim under the State Constitution. *State v. Ball*, 124 N.H. 226, 231 (1983). We have held that a warrantless search is *per se* unreasonable unless it falls within a narrowly-drawn exception to the warrant requirement. *Id.* at 234. The State must prove that the search was validly executed under one of the exceptions to the warrant requirement. *State v. Seavey*, 147 N.H. 304, 306 (2001). Throughout their briefs, the parties refer to the "exigent circumstances," the "emergency," the "emergency aid," and the "community caretaking" exceptions as possible justifications for the police intrusion in this case. Before beginning our analysis, we review the meaning of these terms.

■ ■ The "exigent circumstances" or "emergency" exception requires two elements: probable cause and exigent circumstances. *See id.* at 307.

"Exigent circumstances" exist where the police face "a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety." *Id.* In *State v. Theodosopoulos*, 119 N.H. 573, for example, we held that the police could enter an apartment without a warrant when they believed a sniper was inside. Likewise, in *State v. Slade*, 116 N.H. 436, 437-38 (1976), the police were justified in entering the defendant's home following a standoff during which a gunshot was fired, when the police believed "that there might be a victim [inside] in need of immediate assistance." This exception, thus, allows the police to conduct warrantless searches in the course of their law enforcement duties.

■ The "emergency aid" exception, on the other hand, applies when police officers are performing duties "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. '" *People v. Ray*, 981 P.2d 928, 931 (Cal. 1999) (plurality opinion), *cert. denied*, 528 U.S. 1187 (2000) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The exception is part of the "community caretaking" function of the police, involving duties such as "helping stranded motorists, returning lost children to anxious parents, [and] assisting and protecting citizens in need." *State v. Denoncourt*, 149 N.H. 308, 310 (2003) (quotation omitted).

■ Other courts have adopted the following standard for applying the emergency aid exception. The State must show: (1) the police have objectively "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property"; (2) there is an objectively "reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched"; and (3) the search is not "primarily motivated by intent to arrest and seize evidence." *People v. Mitchell*, 347 N.E.2d 607, 609 (N.Y.), *cert. denied*, 426 U.S. 953 (1976); *see also State v. Mountford*, 769 A.2d 639, 643-44 (Vt. 2000) (adopting *Mitchell* standard); *Com. v. Snell*, 705 N.E.2d 236, 242-43 (Mass.), *cert. denied*, 527 U.S. 1010 (1999) (same).

Although the trial court found that the "exigent circumstances" exception applied to this case, we conclude that the "emergency aid" exception is a better fit. The intrusion of the police in this case had nothing to do with a suspected violation of any criminal statute. Rather, it stemmed solely from their responsibility to respond to a potentially life-threatening emergency. For this reason, we analyze the police conduct under the three-part *Mitchell* standard which we adopt today.

The State must first prove that the police had "reasonable grounds" to believe that an emergency existed and that immediate assistance was

necessary. *Mitchell*, 347 N.E. 2d at 609. "Reasonable grounds" is a lower standard than the probable cause required for an ordinary search or seizure. *See State v. McMinn*, 144 N.H. 34, 38 (1999). The defendant argues that the officers' observations prior to their intrusion did not meet this standard, as they only confirmed that the car was "not in danger of driving over the embankment." Indeed, the defendant states that the police should have left the property after making their observations from the driveway.

◼ While the car may never have been in any actual danger, we cannot agree that it was unreasonable under the totality of the circumstances for Officer St. Louis to believe otherwise. An anonymous tip reported that a car was poised to fall over an embankment. The embankment borders Interstate 89, a major highway. The officer's observation of a car poised at the edge of the defendant's property, at an unusual location right by the fence and the embankment, corroborated at least the general reliability of this tip. Both the darkness and the obscured view prevented the police from confirming other signs of distress from the driveway. Presented with these circumstances, we cannot say the officer lacked "reasonable grounds" to believe the reported emergency existed, and to enter the backyard to conduct further investigation. *See, e.g., United States v. Barone*, 330 F.2d 543, 545 (2d Cir. 1964) (warrantless entry proper when the "investigation . . . would have been incomplete without finding out . . . whether anyone there might be in need of aid").

The defendant also argues that the officer's failure to immediately check on the condition of the car after arriving at the property belies the claim that he had reasonable grounds to believe an emergency existed. Absent any claim of pretext, we attribute no relevance to this fact. The "reasonable grounds" inquiry depends solely on the "empirical facts" available to the police at the time of the intrusion, and not necessarily upon the effectiveness of their subsequent response to a potential emergency. *See Mitchell*, 347 N.E.2d at 609 ; *but cf. State v. Seavey*, 147 N.H. at 306, 308 (fact that police, after entering home, offered medical treatment only *after* asking defendant questions related to law enforcement is evidence of pretext).

◼ Second, the State must prove that the police had an objectively reasonable basis, approximating probable cause, to believe that the emergency was associated with the area to be searched. *Mitchell*, 347 N.E.2d at 609. In this case, the police had an anonymous tip that linked the reported emergency to the defendant's property. By itself, this tip did not establish the informant's veracity or reliability. *Cf. State v. Blake*, 146 N.H. 1, 3-4 (2001); *Florida v. J.L.*, 529 U.S. 266, 270 (2000). The officer's

subsequent observations from the driveway of the residence, however, corroborated the tip. The officer saw that an occupied car was poised in an unusual location in the backyard, right by the edge of the embankment above the highway. *Cf. Alabama v. White*, 496 U.S. 325, 330-31 (1990) (police need not verify every detail mentioned by the tipster to establish reliability of tip). We find that the tip combined with the officer's independent observations provided an objectively reasonable basis approximating probable cause to associate the defendant's property with the reported emergency.

■ Third, the State must prove that the search was not "primarily motivated by intent to arrest and seize evidence." *Mitchell*, 347 N.E.2d at 609. Here, as we have noted, there is no suggestion that the stated police motivation — to ensure the safety of the car's occupants — was pretextual. *Cf. State v. Seavey*, 147 N.H. at 308 ("The assertion of exigency here raises serious concerns that it may have been pretextual to gain entry into the home."). In fact, the intrusion in this case was unrelated to police law enforcement duties and devoid of any motive to investigate criminal activity. *Cf. State v. Psomiades*, 139 N.H. 480, 481 (1995) (police seizure of defendant's purse under community caretaking exception followed arrest of defendant for driving while intoxicated). For this reason, we find the justification for the emergency aid exception particularly strong in this case.

Finally, we note that whereas other "community caretaking" cases have involved searches inside a home or the personal effects of a defendant, the intrusion in this case involved a backyard area that was visible from the front of the house. *See State v. Boyle*, 148 N.H. 306, 306-07 (2002) (seizure of vehicle); *State v. Seavey*, 147 N.H. at 306 (entry into apartment). While within the scope of Part I, Article 19 of our State Constitution, we have recognized that such a lesser intrusion does not infringe upon a defendant's expectation of privacy to the same extent as, for example, an invasion of the home itself. *See State v. Grey*, 148 N.H. 666, 668-69 (2002). When the police force entry into a private citizen's home, even under the guise of community caretaking, more exacting scrutiny may be required. *See State v. Seavey*, 147 N.H. at 306-08.

■ We conclude that under the "emergency aid" exception to the warrant requirement the police were entitled to enter the property and to approach the car to confirm or dispel their reasonable belief that an emergency existed. When Officer St. Louis approached the car, he testified that "all at once" he realized that, while the car was not in danger of going over the embankment, the occupants of the car were smoking marijuana. The trial court found that the discovery of drug use "justified

... further approaching the vehicle from the perspective of [the officer's] initial safety concern [in that] the driver's ability to think clearly may be impeded." Any such justification, however, was unnecessary at that point. A police officer may seize contraband in his plain view so long as: (1) the initial intrusion which afforded the view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *See State v. Hammell*, 147 N.H. 313, 317 (2001). Because all three factors were met in this case, the officer's normal law enforcement responsibilities entitled him to seize the evidence and make the arrests.

Because our State Constitution is at least as protective of the right to be free from unreasonable searches as the Federal Constitution, we reach the same result under an analysis of federal law. *See State v. Ball*, 124 N.H. at 231-32.

*Affirmed.*

BRODERICK and DALIANIS, JJ., concurred; NADEAU, J., with whom BROCK, C.J., joined, dissented.

NADEAU, J., with whom BROCK, C.J., joins, dissenting. While this may be a close case, we dissent because we believe even giving deference to factual findings of the trial court, the standard for applying the emergency aid exception has not been met. Specifically, the State failed to establish that the Lebanon police officers had objectively reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance for the protection of life or property at the time they acquired probable cause to conduct the search.

There is no question that the police perform an important function when they are "helping stranded motorists, returning lost children to anxious parents, [and] assisting and protecting citizens in need." *State v. Denoncourt*, 149 N.H. 308, 310 (2003) (quotation omitted). This case, however, strains the limits of the community caretaking exception. Community caretaking must be balanced with individual rights. The intrusion onto private property, on the basis of an unsubstantiated tip from an anonymous caller, is not justified on the facts of this case.

In reaching its conclusion that the warrantless search was constitutional, the majority finds the anonymous tip "linked the reported emergency to the defendant's property." They assume that the trial judge found that the anonymous tip established the existence of an emergency. The tip, however, linked the *car*, not an *emergency*, to the property. There was never any corroboration that an emergency actually existed. The absence of any corroboration of a real emergency under the facts of this

case is important to the inquiry whether there were objectively reasonable grounds to justify the officer's belief that such an emergency existed.

Even giving credence to the anonymous call, when the officer first observed the car, it was not in the position reported by the caller. The officer claims to have made observations supporting probable cause to conduct a warrantless search at the precise moment he says he became aware there was no emergency. That coincidence is, at best, troubling. Although the defendant did not claim the officer used the location of the car as a pretext to conduct the search, the fact that the officer was not alarmed enough to approach the car immediately negates the conclusion that there were ever objectively reasonable grounds for the belief an emergency existed. Furthermore, the question is not just whether the officer used the location of the car as a pretext to search, but whether he had reasonable grounds to believe there was an emergency in the first place. If police observations negate reasonable suspicion, the existence of a separate suspicious event is not sufficient corroboration, by itself, to justify the exercise of the community caretaking function.

Under the facts of this case, the continued intrusion onto private property without reasonable grounds to believe an emergency existed was not justified. Therefore, we respectfully dissent.