Merrimack
No. 2005-628

THE STATE OF NEW HAMPSHIRE

v.

JAE PSEUDAE

Argued: July 21, 2006
Opinion Issued: September 27, 2006

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Jae Pseudae, appeals his conviction of one misdemeanor count of criminal threatening, *see* RSA 631:4 (Supp. 2005), which was subject to an enhanced penalty, *see* RSA 651:6, I(g) (Supp. 2005), one misdemeanor count of disorderly conduct, *see* RSA 644:2 (1996) (amended 2005), and one misdemeanor count of resisting arrest or detention, *see* RSA 642:2 (1996), following a jury trial in Superior Court (*Smukler*, J.). We affirm.

The record supports the following facts. On January 12, 2005, Concord police officers were dispatched to 42 Dunklee Street in Concord in response to a report that an individual was threatening to kill himself with a gun. The Concord police dispatcher made telephone contact with the individual, later identified as the defendant, and informed him that Concord police officers were outside his residence to ensure his safety. The dispatcher continued to speak with the defendant and asked him to go outside to speak with the officers. One of the officers on the scene testified that during this time, "[i]t looked like there were two females moving about the house."

Eventually, the defendant came out of the house yelling and began to walk toward Officer Cebollero with his hands in his pockets. Cebollero ordered the defendant to take his hands out of his pockets, but he refused and continued to advance. Cebollero repeatedly ordered the defendant to take his hands out of his pockets, but he still refused. The defendant continued to advance until his chest was pressed against Cebollero's rifle. Eventually, Cebollero cast his rifle aside and tackled the defendant. A search of the defendant revealed that he was not armed.

After the defendant was in custody and taken to a secure location, several officers entered the residence without consent or a warrant. Upon entering the residence, the police confronted a twenty-three-year-old female, a sixteen-year-old female, a fifteen-year-old female and a three-year-old male, and asked them to wait outside while they secured the area. On the second floor of the residence, the officers found some guns in the owner's bedroom but did not seize them. While searching the second floor the officers also came upon a locked door which they had been told was the defendant's bedroom. They knocked, announced their presence and then kicked the door down. They saw a loaded .22 caliber rifle on the bed and a summons with the defendant's name on it tacked to the wall. The officers determined the rifle belonged to the defendant and seized it.

Prior to trial, the defendant moved to suppress the rifle and other items found inside his room. He argued that the State failed to prove by a

preponderance of the evidence that the warrantless search was constitutionally permissible. During the suppression hearing, Officer Wright testified that he "took up a position with several other officers to secure the . . . house, because . . . [they] didn't know if [the defendant] was . . . the only person in there that was armed or what was happening." He testified that they were concerned because they "didn't know if there were any more children in there or if there . . . was another subject in there with a gun." The Trial Court (*Fitzgerald,* J.) denied the motion to suppress, finding that the "situation was sufficiently exigent to justify the entry under the exigent circumstances exception." The rifle was introduced at trial in support of the criminal threatening charge. The jury convicted the defendant of all charges. This appeal followed.

On appeal, the defendant argues that the trial court erred in denying his motion to suppress the rifle. The defendant contends that the seizure violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Part I, Article 19 of the New Hampshire Constitution.

■ We first address the defendant's claim under the State Constitution, relying on federal case law only for guidance. *State v. Ball,* 124 N.H. 226, 231-33 (1983). Under Part I, Article 19, warrantless entries are *per se* unreasonable and illegal unless they fall within one of the exceptions to the warrant requirement. *See State v. Santana,* 133 N.H. 798, 803 (1991). The warrant requirement applies not only to criminal searches, but to noncriminal searches as well. *See State v. Beede,* 119 N.H. 620, 625-26 (1979), *cert. denied,* 445 U.S. 967 (1980). The search of a home is subject to a particularly stringent warrant requirement because the occupant has a high expectation of privacy. *See State v. Theodosopoulos,* 119 N.H. 573, 580 (1979), *cert. denied,* 446 U.S. 983 (1980). The State has the burden to show that the search was validly executed under one of the exceptions to the warrant requirement. *See State v. Ricci,* 144 N.H. 241, 243 (1999).

The defendant argues that the trial court erred in finding that there were exigent circumstances sufficient to justify the officers' warrantless entry into his locked bedroom and the seizure of the rifle. We agree.

■ When reviewing a trial court's motion to suppress, we accept the trial court's findings unless they are unsupported by the record or clearly erroneous. *See State v. Johnston,* 150 N.H. 448, 451 (2004). We review the trial court's legal conclusions *de novo. See id.*

The State contends that the search and seizure were valid under the "emergency aid" and "exigent circumstances" exceptions to the warrant requirement. However, the defendant contends that "both the State, and the trial court, expressly relied on the exigent circumstances exception,

rather than the emergency aid doctrine," and therefore "only the exigent circumstances exception is properly at issue." The State agrees with the defendant that the trial court relied on the exigent circumstances exception to the warrant requirement, but contends that it is clear from the arguments advanced during the suppression hearing that the State had "blurred the distinction between the 'emergency' exception and the 'emergency aid' exception," and that both arguments are properly before the court.

A review of the record shows that the emergency aid exception was not specifically asserted by the State. However, the State did argue, among other things, that there were exigent circumstances to justify entering the defendant's room because the officers were not certain if there were other persons inside the home who might have access to a gun. Although the emergency aid exception was not addressed by the trial court, a review of the record shows that sufficient facts were presented during the suppression hearing such that we may review this issue on appeal. *See State v. Berry*, 148 N.H. 88, 92 (2002) ("when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law" (citation omitted)). Therefore, we find that both the exigent circumstances and emergency aid exceptions are properly before us.

On appeal, the State argues that the defendant's ambiguous response to the 911 operator's question whether he was alone is sufficient to trigger one or both of the exceptions. This evidence, however, was not presented to the trial court at the suppression hearing. The parties may not rely on evidence presented only at trial (*e.g.*, the transcript of the Concord police dispatch appended to the State's brief) because this evidence was not before the trial court at the suppression hearing. *See State v. Gonzalez*, 143 N.H. 693, 700 (1999) (prohibiting defendant from relying on evidence presented at trial to support his argument on appeal, where such evidence did "not appear in the suppression record").

█ Under the exigent circumstances exception, the police can make a seizure without a warrant where they have probable cause to seize and exigent circumstances exist. *State v. MacElman*, 149 N.H. 795, 797-98 (2003). Exigent circumstances exist where the police face a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety or create a likelihood that evidence will be destroyed. *Id.* at 798; *Santana*, 133 N.H. at 803.

Here the trial court determined that "[b]ecause there were several people in the house, any of who [sic] could have removed the defendant's gun before a search warrant was obtained, . . . that exigent circumstances justif[ied] the officers' warrantless search of the defendant's room and seizure of the rifle therein." We are not convinced that this situation was sufficiently exigent to justify the entry into the defendant's locked bedroom and seizure of the rifle under the exigent circumstances exception. At the time the officers entered the defendant's room he had already been taken into custody. His bedroom door was locked and there was no reason why the officers could not have obtained a warrant before kicking down the door. When the officers asked the women they initially encountered inside if anyone was upstairs, the women responded that "they didn't believe anyone else was in the house." It was the defendant who had been suicidal and irate. He was securely in custody at the time of the warrantless search.

The facts of this case do not rise to the level of urgency demonstrated in previous cases where we have upheld warrantless emergency entries into private dwellings. In *State v. Slade*, 116 N.H. 436 (1976), the police responded to a reported argument between the defendant and his wife at their mobile home. An officer entered the home to search for potential victims after a gunshot was heard and after the defendant came outside. *Id.* at 437. We found that the officer's entry into the home was valid because he reasonably believed that under the circumstances there could have been a victim in need of immediate assistance inside. *Id.* at 438. Likewise, in *Theodosopoulos*, police were justified in entering the defendant's apartment when they believed a sniper was shooting from within. *See Theodosopoulos*, 119 N.H. at 580-81. In these cases, there were alarming or volatile situations warranting the entry into the private residences. Even where there is a possible victim within a private dwelling but no volatile situation, we have not found the existence of exigent circumstances when there is time to obtain a warrant. *See Beede*, 119 N.H. at 629.

■ Accordingly, we conclude that the evidence presented is insufficient to support a reasonable belief that evidence would be destroyed or that there was a threat of imminent danger to life or public safety. *See State v. Seavey*, 147 N.H. 304, 307 (2001) (whether situation is sufficiently exigent is largely a question of fact). Therefore, we hold that the warrantless entry into the defendant's bedroom is not justified under the exigent circumstances exception.

■ The State also argues that the search was justified under the emergency aid exception. In *MacElman*, we adopted the following

standard for applying the emergency aid exception: "The State must show: (1) the police have objectively reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) there is an objectively reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched; and (3) the search is not primarily motivated by intent to arrest and seize evidence." *MacElman*, 149 N.H. at 798 (citation and quotations omitted).

■ For the reasons given above in our discussion of the exigent circumstances exception, we rule that the evidence presented would not support a finding of an emergency sufficient to justify the warrantless entry into the defendant's locked bedroom. Therefore, we hold that the warrantless entry was not justified under the emergency aid exception.

■■ Finally, the State argues harmless error. It is well settled that an error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *State v. Mason*, 150 N.H. 53, 62 (2003). The State bears the burden of proving that an error is harmless. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of a defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *Id.* In making this determination, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence itself. *State v. Smith*, 141 N.H. 271, 278 (1996). We find that the State has met its burden of establishing harmless error.

The defendant was convicted of misdemeanor criminal threatening. Although both the State and the defendant argue on appeal under the assumption that the defendant was charged with felony criminal threatening, the record shows that the defendant was in fact charged with and convicted of a misdemeanor, which was subject to an enhanced sentence. To convict the defendant of misdemeanor criminal threatening, the State had to prove that the defendant: (1) threatened to commit a crime; (2) against the person of another; (3) with a purpose to terrorize that person. RSA 631:4, I(d); *see also State v. Morabito*, 153 N.H. 302, 305 (2006). "'[T]errorize' means to cause alarm, fright, or dread; the state of mind induced by the apprehension of hurt from some hostile or threatening event or manifestation." RSA 631:4, III(b) (Supp. 2005). To obtain the enhanced penalty for this crime, the State had to prove that the defendant knew that the person he threatened was, at the time the crime was committed, a law enforcement officer acting in the line of duty. RSA 651:6, I(g) (Supp. 2005).

In this case, the evidence of the defendant's guilt was overwhelming. The improperly seized rifle, while relevant to demonstrate his "purpose to terrorize," RSA 631:4, I(d), was inconsequential in relation to the strength of the State's evidence of guilt. This evidence included testimony that, when Officer Cebollero arrived at 42 Dunklee Street to respond to a report of an armed man threatening suicide, the defendant emerged from the house "yelling and swearing." The defendant then turned, having spotted the officer, and started walking towards him. Although the officer had his rifle aimed at the defendant, the defendant walked towards the officer with his left hand raised inside his pocket. The officer testified that "at that point I was really scared. I had a real concern that he had a gun." The officer then warned the defendant that if he did not stop advancing, the officer would shoot him. To this, the defendant responded with profanities. The officer again warned the defendant to stop, and the defendant continued to approach. When he was within several feet of the officer, the defendant then said, "go ahead and . . . shoot me." The defendant then told the officer that he was going to "snipe" him. While the defendant was making this remark, he still had his hand raised inside his pocket, leading the officer to believe that he had a weapon. When the defendant said that he was going to "snipe" the officer, the officer had no doubt that the comment was directed at him as the defendant made the comment directly in front of the officer. The officer testified that the defendant's demeanor during this encounter was "very angry, very agitated." At this point, the defendant and the officer were "no more than a couple of feet" away from each other.

Further, in the defendant's conversation with the Concord police dispatcher, which occurred immediately before the defendant emerged from the house, he expressed his disdain for police officers in general and Concord police officers in particular. He told the dispatcher that he did not want "you guys to get in my . . . way and meet me out front to see if I had a gun." When the dispatcher told the defendant that she wanted to let the officers know when he's walking out of the house, the defendant said: "So what, [s]o you don't get [an] ambush. Listen, [i]f I wanted to ambush you . . . I'd ambush you guys, ok?"

█ The overwhelming evidence shows that the defendant threatened to commit a crime (murder) against a person he knew was a police officer (Officer Cebollero) with the purpose to terrorize that person. Any evidence that the defendant left a rifle in a locked bedroom on the second floor before emerging from the house was largely inconsequential. Had it been excluded, the jury would still have had before it uncontroverted and overwhelming evidence of the defendant's intent, through his words and

actions directed at Officer Cebollero. *See Smith,* 141 N.H. at 279; *State v. Lemieux,* 136 N.H. 329, 331 (1992).

Therefore, any error the trial court may have made in admitting the rifle into evidence was harmless beyond a reasonable doubt as to the criminal threatening conviction. Additionally, since the rifle was not used to support the charges of disorderly conduct and resisting arrest, its admission also constituted harmless error with regard to those convictions.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.