# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0119, <u>State of New Hampshire v. Scott Knowles</u>, the court on February 21, 2019, issued the following order:**

Having considered the briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Scott Knowles, appeals his convictions for criminal restraint and felon in possession of a deadly weapon.  See RSA 633:2, I (2016); RSA 159:3 (2014).  He argues that the Trial Court (<u>Delker</u>, J.) erred in denying his motion to suppress.  He also contends that the Trial Court (<u>Schulman</u>, J.) erred in denying his motion to set aside the verdict on the felon in possession of a deadly weapon charge.

We first address the defendant's challenge to the trial court's order denying his motion to suppress.  The following summary of the evidence is drawn from that order.  On July 20, 2017, at approximately 1:30 a.m., Seabrook Police were dispatched to 120 Lower Collins Street following a report of a "woman screaming for her life."  The police were familiar with the defendant and had previously responded to the residence for, <u>inter alia</u>, domestic disturbances and noise complaints.  When they arrived at the multi-unit residence, the police walked to the back of the building where the defendant's apartment was located.  The responding officers attempted to make contact with the occupants by knocking on windows and walls.  The upstairs tenant appeared, gesturing "frantically" down to the defendant's apartment, but repeatedly refused to come to her door saying, "I'm just a tenant."

One of the officers called out to the defendant, advising him that the police had responded to make sure that everyone in the home was "okay" and asking him to exit the home.  Despite repeated requests from the police to come outside, the defendant refused, stating "f**k you: I'm not coming out; go the f**k away." The defendant then turned off the television and lights which darkened the room and "obscured the officers' already limited view of the interior."

After approximately fifteen minutes of unsuccessful attempts to make contact with the defendant, the police decided to enter the home.  They based this decision on the nature of the call, the defendant's erratic behavior, which was "atypical of his prior conduct towards police," and the lack of any response from the female occupant of the home.  When they entered the home, they found no one in the immediately visible area.  They observed that the door to a back

bedroom, where they had previously heard the defendant, was closed. They again attempted to make contact with the defendant. When they received no response, they had to force the door open because, as they discovered upon entry into the room, a dresser had been placed in front of the door as a barricade. The record supports these factual findings.

On appeal, the defendant argues that the trial court erred in finding that the emergency aid exception permitted the warrantless entry by the police into his home. When we review a trial court's rulings on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous; our review of the court's legal conclusions is de novo. State v. Gay, 169 N.H. 232, 240 (2016). Warrantless entries are per se unreasonable and illegal unless they fall within the narrow confines of a judicially crafted exception to the warrant requirement. Id.; see N.H. CONST. pt. I, art. 19. The State bears the burden of proving by a preponderance of the evidence that a warrantless entry falls within one of these exceptions. Gay, 169 N.H. at 240.

The emergency aid exception is part of the community caretaking function of police and involves duties such as assisting and protecting citizens in need. State v. MacElman, 149 N.H. 795, 798 (2003). In MacElman, we adopted the following three-part test to determine whether the emergency aid exception applies: (1) the police have objectively reasonable grounds to believe that there is an emergency at hand and immediate need for their assistance for the protection of life or property; (2) there is an objectively reasonable basis, approximating probable cause, to associate the emergency with the place to be searched; and (3) the search is not primarily motivated by intent to arrest and seize evidence. Id.; see People v. Mitchell, 347 N.E.2d 607, 609 (N.Y. 1976).

The defendant argues that the State failed to satisfy the first and third prongs of this test. He cites the anonymous nature of the report of the "woman screaming for her life" and posits that it could have been "a couple merely having noisy sex."

We have held that "reasonable grounds" is a lower standard than the probable cause required for an ordinary search or seizure, and that the "reasonable grounds" inquiry depends solely on the facts available to the police at the time of the intrusion. MacElman, 149 N.H. at 799. The report of a woman screaming for her life, the neighbor's frantic gesturing to the defendant's apartment, the defendant's agitated state, the past history of police interaction at the residence, and the defendant's refusal to come to the door after the police explained the reason for their presence provided objectively reasonable grounds for the police to believe that there was an emergency at hand and that there was an immediate need for their assistance to protect the unidentified female.

The defendant also asserts that the police "throughout their time at the defendant's house, were looking to gather evidence and arrest the defendant."

2

Although the record does not support his assertion, we note that the coexistence of caretaking and investigatory motives does not invalidate a seizure as long as the caretaking is not "'a mere subterfuge for investigation.'" State v. D'Amour, 150 N.H. 122, 127 (2003). The separation of the community caretaking function from investigation of a criminal matter need only relate to a sound and independent basis for each role. Id. at 126.

The record demonstrates that the police entered the defendant's home to check on the well-being of a woman who had been heard "screaming for her life." The officers' concerns for the woman's well-being and the likelihood that she was still in the home provided an independent basis for their entry into the home. Accordingly, the entry was justified under the emergency aid exception to the warrant requirement.

The defendant also argues that the trial court erred in denying his motion to set aside the verdict on the felon in possession of a deadly weapon charge. Prior to trial, the defendant stipulated that he was a felon. Accordingly, the felon in possession charge stated that the defendant "knowingly, while being a person prohibited from possessing a deadly weapon, had in his possession or under his control a machete . . . as defined in RSA 625:11 V, in that in the manner that the machete was used, intended to be used, or threatened to be used is known to be capable of producing death or serious bodily injury." The defendant argues that the State presented no evidence that he "'used, intended to use or threatened to use the machete' in any manner" and that the trial court's order denying his motion focused only on the appearance of the machete rather than its "role in the case."

To prevail on his challenge to the sufficiency of the evidence, the defendant must show that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Noucas, 165 N.H. 146, 151 (2013). Where the evidence does not consist solely of circumstantial evidence, it need not exclude all rational conclusions other than guilt. Id.

"Threat" has been defined as "'any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from her acts that free and voluntary action that alone constitutes consent.'" State v. Johnson, 130 N.H. 578, 581 (1988) (quoting Black's Law Dictionary 234 (5th ed. 1979)) (brackets omitted). "[A] threat can be verbal or nonverbal, i.e., 'something that by its very nature or relation to another threatens the welfare of the latter.'" Id. (quoting Webster's Third New International Dictionary 2382 (1961)).

We note at the outset that the jury found that the defendant unlawfully confined the victim in the room where the machete was found. The defendant does not challenge the sufficiency of the evidence supporting this finding on appeal. Accordingly, the only issue before us is whether, during the victim's

3

confinement, the defendant used, intended to use, or threatened to use the machete in a manner that was known to be capable of producing death or serious bodily injury. The evidence in this case included the machete, which was admitted as an exhibit at trial. No other tools were found in the bedroom. In its order denying the defendant's motion to set aside the verdict, the trial court described the machete as "large" and further:

> It appears to be new and unused. One side of the machete includes a serrated blade. The other side is a sharp blade. The weight of the machete is considerable. If put to use as a weapon, the machete could easily sever a victim's limbs and cause other grievous bodily injuries. If used to threaten harm, the machete would instill enormous fear of mayhem and possible death.

The court described the victim's demeanor during her testimony as "quite extraordinary and emotional." She testified that: (1) when the police arrived, she was "being held" in the bedroom where she was found; (2) she had not seen the machete before July 20; (3) she was unable to call out to the police as they were trying to gain entry to the room because the defendant had his hand over her mouth and told her to be quiet; and (4) she was "in fear for [her] life." The jury also heard that the machete was located between the bed and the nightstand and that the police found a cooking pot in the bedroom that appeared to have been used by the victim as a chamber pot. As the trial court observed: "From these uncontested facts, the jury could infer that the defendant used some form of coercion to confine the victim for several hours."

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that the defendant committed the offense of felon in possession of a dangerous weapon on July 20, 2017.

<u>Affirmed</u>.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.


**Eileen Fox,**
**Clerk**

4