Carroll,
No. 4537.

FERRIN G. ELLSWORTH AND ROCK W. DAVID

*v.*

THOMAS WATKINS, JR.

Argued April 2, 1957.

Decided May 23, 1957.

52

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Carl O. Randall, Jr.* (*Mr. Randall* orally), for the plaintiffs.

*Sleeper & Mullavey* for the defendant, furnished no brief.

KENISON, C. J. The record in this case clearly demonstrates that the assault and battery on the plaintiffs by the defendant was sudden, unprovoked and brutal, resulting in serious injuries and

substantial damage to the plaintiffs. The only question before us is whether there were errors in the trial which affect the verdicts.

The first exception is evidential. The plaintiff Ellsworth and the witness Pasco were allowed to testify that after they had left David at the inn, they heard a scream and Mrs. David saying, "Come back. He is going to kill him." This testimony was not offered for "the truth of the matter" but "merely as background matter." The defendant objected to it as hearsay. Many relevant oral expressions made out of court may be offered for a variety of purposes other than to prove the facts asserted. *Emery* v. *Woodward*, 96 N. H. 61, 62. When this is done, the hearsay rule is not a bar. VI Wig. Ev. (3rd *ed.*) *s.* 1766. A common example is where an utterance is offered to show the effect on the hearer for the purpose of proving circumstantially the state of mind of the person to whom the statement is made or to show the information he had as bearing on the reasonableness of his subsequent conduct. McCormick, Evidence (1954) *s.* 228, *p.* 464. "Whenever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." VI Wig. Ev. (3rd *ed.*) *s.* 1789.

Mrs. David's statement, whether true or false, was clearly relevant to show the effect that the statement had on the subsequent conduct of Ellsworth and Pasco in suddenly stopping their car and attempting to rescue David from attack. As a matter of law this testimony was not hearsay; as a matter of common sense and logic it was relevant evidence to show what happened and why Pasco and Ellsworth did what they did. This matter is more fully explored by the editor of the pocket supplements to Wigmore's Treatise on Evidence in a discerning article; Rucker, The Twilight Zone of Hearsay, 9 Vand. L. Rev. 453, 470, *et seq.* (1956). Accordingly, it is unnecessary to consider whether this evidence would otherwise be admissible under some exception to the hearsay rule, such as the one sometimes described as the ubiquitous and thought-paralyzing phrase *"res gestae."* See Donnelly, The Hearsay Rule and Its Exceptions, 40 Minn. L. Rev. 455 (1956); VI Wig. Ev. (3rd *ed.*) *s.* 1767, *p.* 182.

The plaintiffs' counsel argued to the jury that a polio epidemic or "polio scare" that occurred in the last of July or the first of August had nothing to do with the number of applicants the plaintiff

Ellsworth was able to obtain for his boys' camp at the beginning of the summer. Inasmuch as the evidence relating to the "polio scare" was introduced into the case by the defendant, it was proper for the plaintiffs' counsel to comment on it to show it had nothing to do with the damages that Ellsworth suffered because he was unable to personally solicit campers at the beginning of the camp season. *McLaughlin* v. *Union-Leader,* 99 N. H. 492.

The defendant requested and the Court refused to give the following instruction to the jury: "If you find that Mr. David, knowing that Thomas Watkins, Jr. had been drinking to some extent upon his arrival at Mount Whittier Lodge, mixed and sold him liquor which caused the defendant to become drunk and out of his mind and that this act upon the part of Mr. David was the cause of Mr. David's injury, you would be entitled to use such findings of fact in mitigation or reduction of the damage done to Mr. David." This instruction sought to raise the question whether provocation or misconduct may be shown in mitigation of actual or compensatory damages. *Cf. Cross* v. *Grant,* 62 N. H. 675. On the record in this case the instruction was properly refused since there was no evidence that David knew or should have known that the defendant had consumed too much intoxicating liquor or that he would become combative and dangerous if he did so. During the several months that the defendant had resided at the inn there had been no drinking or quarreling and there is no evidence in the record that David in any way provoked the defendant prior to the assault. Consequently the Trial Court was justified in refusing to give the instruction for the reason that the evidence did not warrant it. This is so irrespective of what the law should be in this state if there is evidence of misconduct or provocation in cases of actual or compensatory damages. Anno. 63 A. L. R. 890.

The plaintiff Ellsworth introduced evidence that due to the injuries from the assault he was unable to personally solicit campers and that this resulted in loss of earnings. The defendant objected to this evidence partially upon the ground that the declaration in the writ did not allege "special damages in connection with the business, as distinguished from the loss of his time." Since Ellsworth's operation of a boys' camp was essentially a personal service business requiring his personal attention losses from his camping business were material on the question of his earning capacity. 2 Harper & James, The Law of Torts, *s.* 25.8 (1956); McCormick, Damages, *p.* 312. See *Holyoke* v. *Railroad,* 48 N. H. 541, 545.

The defendant excepted generally to the introduction of evidence showing loss of profits from the operation of Ellsworth's boys' camp due to the assault. The Court allowed the evidence and charged the jury that it was evidence of "loss [of] his earning power." This was proper. *Hill* v. *Company*, 96 N. H. 14, 17. The rule is concisely stated in Restatement, Torts, *s.* 924, *comment* b, at page 634, as follows: "Where the injured person was not receiving a salary but owned and was operating a business which was deprived of his services by the injury, his damages are the value of his services in the business during such period. If his services, rather than the capital invested or the services of others, were the predominant factor in producing the profits, evidence of diminution of profits from the business will be received as bearing on his loss of earning capacity."

The exception to the denial of the motion to set aside the verdicts as excessive is overruled, no abuse of discretion appearing. The motion does not raise the issue whether exemplary damages were included in the verdicts. An untidy area of the law of damages in this state exists in cases involving assaults and intentional torts. McCormick, Damages, *p.* 279; anno. 16 A. L. R. 771, 796, 797. Whether the rule of *Adams* v. *Strain*, 80 N. H. 90, 91, which prescribes "a more liberal rule of damages" in such cases constitutes in effect exemplary damages is not entirely clear. *Fay* v. *Parker*, 53 N. H. 342; *Bixby* v. *Dunlap*, 56 N. H. 456. However, in this instance there is no occasion to reconcile the cases.

*Judgment on the verdicts.*

WHEELER, J., took no part in the decision; the others concurred.