Hillsborough-northern judicial district
No. 2006-669

THE STATE OF NEW HAMPSHIRE

v.

DAVID S. CONNOR

Argued: October 18, 2007
Opinion Issued: December 14, 2007

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, David S. Connor, appeals his convictions on three counts of arson, *see* RSA 634:1 (2007), following a jury trial in Superior Court (*Mangones*, J.). We reverse and remand.

The record supports the following. The defendant's convictions stem from three separate fires, all occurring in the early morning hours of August 19, 2004. The first fire was started at an apartment building at 295 Amherst Street in Manchester. It was later determined that the fire originated from a pickle jar containing flammable liquid, found on a shelf in a first floor community closet. Fingerprints were lifted from the jar and sent to the state forensic lab for analysis. The two additional fires occurred at 291 Manchester Street and 459 Beech Street.

At trial, Timothy Jackson, a criminalist at the state lab who was qualified as an expert in latent fingerprint analysis, testified to his identification of the fingerprints found on the pickle jar. According to his testimony, the latent fingerprint methodology utilized by the state lab follows a four-step procedure known as "ACE-V"—analysis, comparison, evaluation, and verification. Jackson testified that his opinion is formed following the analysis, comparison, and evaluation of the latent print to the known print. However, the ACE-V methodology requires an additional step, where a second technician independently analyzes, compares and evaluates the relevant fingerprints in order to verify the findings of the first technician. Following the verification of his identification, Jackson is then able to generate a report and issue his opinion.

During the State's direct examination, the defendant objected to Jackson offering his opinion without first testifying about the verification step, arguing there was insufficient foundation for his expert opinion without it. The State responded by asking several questions regarding the verification of Jackson's fingerprint identification. However, when Jackson testified about the verification process and the opinion of Lisa Corson, the verifying technician in this case, the defendant objected to each question on the grounds of hearsay. These objections were overruled.

The State concluded its direct examination of Jackson and the court recessed for lunch. Following the luncheon recess, the defendant moved to strike Jackson's entire testimony, arguing it was hearsay and also violated his right to confrontation, citing *Crawford v. Washington*, 541 U.S. 36 (2004). The court denied the motion. On appeal, the defendant argues the trial court erred in failing to sustain his hearsay and *Crawford* objections.

We review a trial court's rulings on the admissibility of evidence under an unsustainable exercise of discretion standard, and reverse only if the defendant demonstrates the rulings are clearly untenable or unreasonable to the prejudice of his case. *State v. Hammell*, 155 N.H. 47, 48 (2007). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. N.H. R. Ev. 801(c). In general, hearsay is not admissible unless an exception to the general rule applies. N.H. R. Ev. 802. Since no exception applies in this case, and the statements were offered for their truth, the disputed statements were inadmissible hearsay.

The State first argues that Jackson's testimony about Corson's opinion was not hearsay because it was not offered for the truth of her opinion, but rather to aid the jury in evaluating the reliability of Jackson's opinion by showing his compliance with the ACE-V methodology. We do not agree. Jackson did not merely testify that all four steps of this procedure had been followed. Instead, he described the verification process, and the results of the verification conducted here. Specifically, Jackson testified that the verifying technician "would have been given the photograph and the lift. They could have determined what they wanted to use for their comparison. . . .[T]hey will go through the entire ACE methodology to render their opinion." In addition, Jackson testified to Corson's opinion, stating that she had also determined that the latent print found on the pickle jar "[w]as, in fact, made by the left middle finger from the individual whose name appears on the fingerprint card of David Connor."

■ Contrary to the State's assertion, we conclude that Jackson's testimony regarding the process undertaken and Corson's ultimate opinion was offered for its truth, as distinguished from mere satisfaction of procedure. The verification process, as described by Jackson, supports our conclusion. Jackson's testimony clearly illustrates that the verification is not conducted to ensure he had followed the applicable procedures. Corson did not simply check that the equipment or procedure used by Jackson was proper or that Jackson employed the correct number of comparison points in making his determination. Rather, it is clear that her task was to affirm Jackson's identification by undertaking an independent analysis, comparison and evaluation of the fingerprint, and ultimately forming her

own opinion. By its very nature, the purpose of this verification, as described by Jackson, lies in the truth of Corson's opinion, that is, that her independent ACE procedure resulted in the same conclusion, thus corroborating Jackson's opinion. *See Simpkins v. Snow*, 139 N.H. 735, 737 (1995) (statement offered for its truth when it has no significance unless a true representation). Jackson's testimony relating to the verification process and Corson's independent opinion extends well beyond establishing Jackson's compliance with procedure. Under these circumstances, this evidence constitutes inadmissible hearsay unless it falls under an exception to the rule.

The State argues Jackson's testimony is admissible under Rule 703 because Jackson relied upon Corson's opinion in forming his own. We disagree. New Hampshire Rule of Evidence 703 provides that facts or data upon which an expert bases his opinion need not be admissible if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. *See State v. Fernandez*, 152 N.H. 233, 244 (2005). Here, there is no evidence that Jackson relied upon Corson's verification as a basis for his opinion. In fact, Jackson testified that his analysis was complete, and his opinion formed, *prior to* Corson's verification, but that he could not release this determination until after it had been verified. Thus, contrary to the State's assertion, Jackson did not rely upon Corson's verification as a basis for his opinion; it was simply a necessary prerequisite to the release of his already formed opinion.

The Illinois Appellate Court addressed a similar issue in *Kim v. Nazarian*, 576 N.E.2d 427 (Ill. App. Ct. 1991). *Kim* concerned a medical malpractice action involving the failure of a radiologist to properly diagnose an illness based upon his review of the patient's X-rays. *Id.* at 429. The trial court allowed two defense experts to testify, over the plaintiff's objection, to the results of their consultations with colleagues regarding the X-rays. *Id.* at 431-33. Both experts admitted to forming an opinion prior to distributing the X-ray films to colleagues. *Id.* at 431, 432.

On appeal after a defendant's verdict, the court held that the verification testimony was not permissible under Rule 703, concluding, "If the expert's colleague merely corroborates the opinion independently arrived at by the expert, such corroboration might reinforce the expert's confidence in the opinion; the corroborative opinion, however, is not the *basis* of the expert's opinion." *Id.* at 434. It further stated that Rule 703 does not allow "an expert's testimony to simply parrot the corroborative opinions solicited from nontestifying colleagues." *Id.* This rationale is equally applicable here. Jackson's testimony proves he did not rely upon Corson's opinion in forming his own. Rather, Corson's verification simply

corroborated what Jackson had already determined to be an identification of the defendant's fingerprint. *See Wilkie v. State*, 715 P.2d 1199, 1204 (Alaska Ct. App. 1986) (testimony regarding other experts properly excluded; Rule 703 not applicable because expert had come to his conclusion based upon own observations). Because Jackson did not rely upon Corson's opinion in forming his opinion, Rule 703 is not applicable.

We acknowledge that some jurisdictions have held Rule 703 applicable under these circumstances, finding that the testifying expert's opinion is not final until verified and, therefore, the expert relies upon the verification in this sense. *See State v. Jones*, 368 S.E.2d 844, 848 (N.C. 1988). In *Jones*, a fingerprint expert utilizing a methodology similar to ACE-V testified to the verification by a second technician performed in that case. *Id.* at 846. On appeal, the State argued this testimony was admissible under Rule 703. *Id.* The *Jones* Court agreed, holding that the other examiner's verification formed a basis for the expert's opinion. *Id.* at 848. It explained:

> [The expert] specifically stated that his identification "has to be verified ... before it can be ... mailed out." It is thus clear that, under standard S.B.I. operating procedures, without verification of his own opinion by another examiner the witness could not have arrived at, and testified to, a final conclusion regarding the fingerprint. The opinion of the other examiner thus necessarily forms a part of the basis for the opinion to which the witness testified ....

*Id.*

However, this rationale fails to recognize that Jackson formed his opinion without any contribution from Corson. As the dissent in *Jones* noted, while the expert may not have been able to testify to his conclusions regarding the fingerprint without verification, it does not follow that the opinion of the other examiner forms a part of the basis for the testifying expert's opinion. *Id.* at 849 (Webb, J., dissenting). As is the case here, "[t]he witness had formed his opinion at the time the verification was made. The verification may have made him more confident that he was right but he did not form his opinion based on the verification." *Id.* (Webb, J., dissenting). Jackson's testimony demonstrates that his expert opinion was formed independent of Corson's verification, not based upon it. Thus, Rule 703 is not applicable.

The defendant also objects to Jackson's testimony based upon *Crawford*. Because we agree with the defendant that the trial court erred on hearsay grounds, however, we need not address this issue.

 The State contends that even if the trial court erred in admitting the fingerprint evidence, the error was harmless. An error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *State v. Pseudae*, 154 N.H. 196, 202 (2006). The State bears the burden of proving the error was harmless. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential to the strength of the State's evidence of guilt. *Id.*

 Although Jackson's identification of the defendant's fingerprint would have been admitted even if the trial court had not erred, given the record, we cannot conclude that the admission of Corson's opinion was harmless beyond a reasonable doubt. Jackson's opinion was crucial to the State's evidence of guilt, as the fingerprint lifted from the pickle jar was the critical piece of evidence physically linking the defendant to the fire at 295 Amherst Street. The defense's cross-examination of Jackson focused upon errors that could be made in the process of a fingerprint identification and its general reliability. However, any question raised in this respect is severely undermined by evidence of Corson's opinion affirming Jackson's identification in this case. Her opinion necessarily and improperly bolsters the reliability of Jackson's determination—a determination significant to the State's case. Further, the alternative evidence of the defendant's guilt is largely circumstantial and not of an overwhelming nature, quantity or weight, thereby amplifying the importance of the jury's acceptance of Jackson's opinion. Therefore, we cannot conclude that Corson's opinion did not affect the verdict, and was harmless error, beyond a reasonable doubt.

Accordingly, we hold the trial court erred in allowing Jackson to testify to Corson's opinion, and that this error was not harmless. Because consideration of this evidence was not limited to the 295 Amherst Street fire, we reverse the defendant's convictions on all three indictments.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred; HICKS, J., dissented.

HICKS, J., dissenting. Because I think that the verification testimony had a non-hearsay purpose, I respectfully dissent. To me, the non-hearsay purpose for the admission of the fact of verification by an independent examiner is simply to show the effect on the hearer, independent of its truth or falsity.

> Many relevant oral expressions made out of court may be offered for a variety of purposes other than to prove the facts asserted. When this is done, the hearsay rule is not a bar. A common example is where an utterance is offered to show the effect on the hearer for the purpose of proving circumstantially the state of mind of the person to whom the statement is made or to show the information he had as bearing on the reasonableness of his subsequent conduct.

*Ellsworth v. Watkins*, 101 N.H. 51, 53 (1957) (citations omitted).

The State's fingerprint expert, Timothy Jackson, testified that "according to standard operating procedures I'm not even allowed to brief the submitting agency on my findings until they are verified if an identification has been made." Thus, testimony regarding Jackson's receipt of verification under the ACE-V protocol is admissible for the non-hearsay purpose of showing "the reasonableness of his subsequent conduct" in rendering his opinion on the fingerprint evidence. *Id.*

The ACE-V protocol is accepted in a number of jurisdictions. *See, e.g., United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006) (noting that "other federal courts have favorably analyzed the ACE-V method under *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),] for footwear and fingerprint impressions"). As Jackson's testimony indicates, an opinion of an examiner is of little use in court or out unless it is verified. Accordingly, verification evidence should be admissible in some limited form with a limiting instruction.

In this case, the proper procedure would have been for the defendant to request, and the trial court to give, an instruction that the verification testimony was not to be considered for its truth but for the limited purpose of explaining how Jackson was able to render his opinion under the ACE-V protocol. As the defendant failed to request such an instruction, I would affirm. *Cf. State v. W.J.T. Enterprises*, 136 N.H. 490, 494 (1992) (noting that although defendants challenging evidence admitted for a non-hearsay purpose "may have been entitled to a limiting instruction regarding the purpose for which the testimony was admitted, none was requested").